21-1585 Abdirisak Jama v. Merrick B. Garland Good morning, your honors and hold on one moment, please. Sure. No problem All right, mr. Richards we'll hear from you first Sure Again, good morning. May it please the court Oliver Richards on behalf of the petitioner this case turns on a central tenet of administrative law is that parties who Have claims adjudicated by administrative agencies ought to be able to seek meaningful and effective review from an article 3 court Here the board's decision deprived. Mr. Jama of the ability to seek the review of this court in at least two ways first the board's decision fails to explain the basis for why it reached the decision it did and Second the board simply failed to address a number a significant number of the arguments raised by mr. Jama to it Unless you all have specific questions or have a different preference. I'll address the first issue first and the second issue second So first this court's precedents are clear in order to pass muster an administrative agency decision in particular the board Must explain and give a sufficient explanation that we can discern and evaluate how it reached the decision it did Here the board's decision fails that basic test In essence the board's decision consists nothing more of albeit accurate citations to this court's precedents and then conclusory statements that mr. Jama failed to meet his burden Now what the government the government doesn't really defend the board's decision It mostly just says instead of looking at the board's decision. We should look at what the IJ decided and It is true That the board can adopt and affirm the IJ's decision But one thing the board's decision is clear about here is that it didn't do that You know the board right here on page two. It's separated the IJ's decision into two parts It said well, we're gonna look at the board of the IJ's decision regarding credibility And then we're going to look at the IJ's decision in terms of something else. It characterizes as the merits Now looking at the IJ's decision the IJ didn't separate his decision in into these two separate parts and indeed It's difficult to discern what parts the board considered to be on Credibility and what parts the the board considered to be quote on the merits The IJ's decision reached a single determination whether mr Drama had proven that whether it was more likely than not. He would be tortured upon return to Somalia and on that Help help us help me understand so is there an argument to say that that the Immigration judge sort of said well assuming what he's saying is true. There's no merits Is that an is that a is that a distinction that you see in the IJ's opinion? I? Don't see that distinction It certainly is not clear to me and if we look at like pages 13 to 15 of the IJ's in the appendix of the IJ's decision Regarding mr. Drama's claim on torture based on his Christianity there are intermittent intermingled discussions about the country conditions and then he quickly turns to Discussions about whether the IJ believed mr. Drama had legitimately converted to Christianity There's no separate distinction It would be a different case Entirely had the IJ said that or had the board said as it did in cabaret that we're going to take everything The petitioner said is true and then here are the reasons why it would fail even in that respect so Throughout the IJ's decision these credibility determinations are intermingled. For example, mr. Drama gave testimony regarding Two of his acquaintances that had also been deported one of whom had been detained at the airport and questioned Regarding his reasons for deportation by the government That was based on his testimony and the IJ of course discusses that but and discounts it based on at least in part the credibility determination That is certainly relevant to the merits and certainly relevant to what would happen to him if he is Deported even assuming that his claim of being a Christian is true The Same would go true for his claims regarding mental health, you know And this is about page 15 of the appendix where he discusses the IJ discusses the mental health The IJ dismisses those again based on credibility Largely based on his apparent belief that PTSD and depression don't constitute real mental illnesses you know decisions we would Say are not supported by the record and or medical evidence But nonetheless this credibility determination was inherent in the IJ's decision And it is it is impossible at least from based solely on the IJ's decision to separate a credibility determination from a merits determination In basically You know the the credibility determination infected the entire IJ's Determination, you know and that credibility determination was of course based on what we believe is clear error The the IJ asked a series of questions irrelevant to the proceedings relating to mr. Drama's previous conviction almost it seems from reading the record in an attempt to to evaluate credibility on its own and Because mr. Drama claimed to maintain, you know maintained his innocence for certain of the crimes You know, basically the IJ said if you can if you're gonna say you're innocent I'm not gonna believe you and I'm gonna find you not credible Which we believe is clear error and that issue of course was raised to the board and the board said we're not even going to Address that fair enough But the board then was required to explain why ignoring the IJ's decision Why mr. Drama wasn't entitled to relief Of course The credibility issue was only one of several issues raised before the board that the board didn't address This court's precedents are equally clear and it's just a basic tenet of administrative law that you know administrative agencies need to consider all aspects of a problem before reaching the decision and That includes addressing in a meaningful way the arguments raised to the board here There were four points four or five points raised to the board and the board's decision hardly addresses any of them The first point of course was the credibility determination Which we know the board didn't address because the board said it wasn't going to address it The second issue and this is appendix 20 to 33 where these arguments are laid out was that the IJ had Applied an improperly heightened standard I guess you can give the board the benefit of the doubt saying that the that the the IJ applied the correct legal standard But nowhere in the board's decision Does it address either of the arguments that come next which is the IJ's apparent? misunderstanding of their claim regarding his clan This is claim as very clearly on the briefing below and and to the IJ in the oral discussion Was that he didn't fear torture because he was a member of the odd table clan He feared torture by his clan because he's westernized for all of the same reasons that he'd feared He fears torture by the Somali government in Al-Shabaab And the second very important point and I just note that there's voluminous record evidence on this, you know that the Somali Infiltration of the Somali government by members of Al-Shabaab And I understand this court has made pronouncements on that previously I would I would submit that those are on a different record and that this record here is extremely significant and I encourage the court to for example, look at the Declaration of Mary Harper who's the BBC Africa editor and who has To her own peril done significant reporting of Somalia who says that Al-Shabaab has infiltrated the Somali security and intelligence services the Somali government and other key institutions and That allows it to target individuals, right? And what the IJ did was said look the official government policy The official government policy of Somalia is to oppose Al-Shabaab And in fact, the government of Somalia is at war with Al-Shabaab, but as this court has made clear for example Ramirez Perro It doesn't matter what the official government policy is the appropriate question is whether torture is done under color of law or with the the consent or knowledge Of those under under color of law Governments are not monolithic as this court recognized governments are made up of individuals And while official government policy may be one thing Members who enforce of the government or or those even police officers who enforce the laws They have their own views and there's there's voluminous evidence in the record that even in Mogadishu where you know This court's precedents have previously said may be a safe place from Al-Shabaab that the police and security forces There are are sympathetic to and in fact assist assist with targeting individuals so With that, you know Now this lastly, you know, I understand that this appeal addresses certain dry issues of administrative law and I think these are obviously very important Issues, you know just from an abstract standpoint, you know, we have entrusted administrative agencies to adjudicate claims But the administrative agencies do require oversight and oversight by an article 3 court But even beyond those issues of administrative law They matter here, you know I'm a Catholic and been a Catholic and admittedly Catholic follows. It was not a Bible based church, but from viewing. Mr. Drama's testimony this is a man who knows the Bible extensively certainly better than I do and Even the IJ admitted at the hearing although he had some questions about when the conversion took place He said I have no doubt that you sit here today as a Christian, right? The government's answer to this and the government acknowledges in its brief and that that mr Drama has reason to fear his fellow Somali Muslims Based on his conversion. They say well he's lied in prison because he was afraid of retribution Now the government's response to his deportation appears to be look You should just continue to lie about your religion when you're deported and you'll be fine Well, I find that curious To use a kind word But it's also problematic because if for no other reason then there's a public hearing with public briefing of mr Drama declaring his Christian is his Christianity that they're all available to the Somali government to Al Shabaab you know and all of this evidence that is presented here certainly makes him a poster child for the type of Targeting that would be done under Sharia law that Al Shabaab wants to enforce and lastly, I'll just point to Although certain parts of the Somali Constitution guarantee the right to practice religion In the very document the the IJ appears to rely on says that's only if your religion is Islam and it certainly prohibits Conversion so if even ignoring the Al Shabaab issues, he certainly would be targeted based on his conversion And as the court has other questions, I'll preserve the remainder of my time for rebuttal Very well, thank you for your argument. Mr. Pennington. We'll hear from you Thank you judge and good afternoon now Greg Pennington for the Attorney General So I'll start with the judge Kelly's question about whether the IJ's decision can be separated into two parts and it can So if you look at page 57 of the record the IJ After noting some concerns about the testimony Says that I'm going to enter an adverse credibility finding The judge could have stopped right there As I'm sure the court's aware an adverse credibility finding can be fatal to applications for relief And protection from removal for failing to meet the burden of proof, but the judge went on Sorry judge, I think you were muted. Yeah, I was I was asking mr. Richards to mute, but he did so I think we're all set Thank you, so after the judge enters this adverse credibility finding he then spends the next two page Pages denying the applications based on the criminal convictions The asylum application for the aggravated felony and the withholding application of the criminal conviction Statute and the convention against torture for the aggravated felony plus five years in prison And then he spends a page talking about the factors He needs to consider on whether an applicant has met their burden of proof for deferral of removal under the Convention Against Torture Whether there's been past torture whether the applicant can relocate But doesn't the credibility this is the discussion of the Christianity and whether or not he would reveal His his newfound religion when he returned it just does seem like there is a bleeding into if we're going to call it the merits conclusion a bleeding in of the credibility and I'm just it just could you respond to that? I mean, I know you're you're walking through different parts of the opinion and I understand that but when you get to sort of the guts Christianity and what would happen to him? I don't know how you take out the credibility determinations Well judge Kelly if you look at the language the the immigration judge uses He says and this is talking about whether he's going to outwardly express being Christian He says I do not find that compelling and so as the Supreme Court recently recognized in Garland v. Dye the immigration judge doesn't have to Find testimony plausible or believable or sufficient to meet the burden of proof Irrespective of an adverse credibility finding so I think that's what the immigration judge is trying to say here I simply don't find your testimony sufficient to show that you're actually going to go And profess yourself to be a Christian and then the next sentence or two the judge goes on to say Give me a second to get my place here The court does note that in the country condition documents that certainly if it were to come to light that he has converted That he would face harassment discrimination inability to find a job Stigmatization significant prejudice problems finding work. The judge goes through and recognizes that okay Assuming that you do say that you're Christian You're gonna be in a bad place But you're not going to be tortured and I would remind the court that torture is a very specific term in the regulations that requires Someone to be in the custody or control of a government official and then be subjected to cruel and inhumane treatment or That it happens by a private individual and a government official breaches their legal responsibility to intervene so I do believe that While I can say that there might be an argument that the judge was looking and the judge even references His adverse credibility finding from the previous section as to why it was not persuaded That mr. Jawa would come out the judge did consider in the alternative If it does come to light if you do profess your Christianity, you're gonna be in a bad place But it wouldn't amount to torture So and then, you know, the judge goes on to consider the rest of mr. Thomas claims on the merit so the government does believe that there is separation between the adverse credibility and the merits and as this court held in Khadibi, you know The board doesn't have to Address an adverse credibility finding in every case, you know only occasionally where it's so intertwined And it cites to a decision where a judge required corroboration Based on an adverse credibility finding so I can see that being intertwined here but here the the immigration judge seemed to adequately separate it into two separate holdings and those holdings best on a Premise that is well recognized in this court's precedent and in board precedent that speculative testimony About what's going to happen? Mr. Jamba has no foundational Experience about what happens to Somalis who are deported. So all he's left with is country condition evidence and This court is also held at just broad country condition evidence of human rights abuses is insufficient There has to be an individualized risk of torture by a government official or with the government officials acquiescence so Taking that the board did not err and Not addressing the adverse credibility finding and then responding to Mr. Oliver's other arguments That he raised that the immigration judge misconstrued his clan argument so The board specifically said in this last paragraph of his decision It recognized his arguments That the immigration judge misconstrued his claims and that's exactly how he put it in his appellate brief to the board And it responded that it did not find those persuasive, you know, how is that? How is that enough that just we're not persuaded? What what are we as as the court reviewing the agency determination? What are we supposed to do with it? How do we know? Well, this court requires that the board show that it It looked at the arguments and it responded to them and didn't nearly react It doesn't have to write a tome on every argument raised by a petitioner. We just have to know This is certainly not a tome. I mean, this is pretty much the the opposite I mean, I think we can all agree on that aspect of it, but this is something you know a little closer call I would agree and the board is not known for being Artful drafters of eloquent opinions. Most of its decisions are short but here Looking at the the meat of the claim The board did not air because the immigration judge did not hear the board says it considered its argument And if you look at the immigration judge decision At page 60 of the record the judge goes into why? Mr. Jama fears torture and he says number three that he would be tortured. Mr Jama would be tortured because he is a member of the article clan and it will torture him for being Christian as well of him speaking pidgin English for pigeon Somali, excuse me having tattoos and that the government will somehow acquiesce to this torture So that's at page 60 where the immigration judge recognizes his claim that he's a member of this clan and his clan Will torture him for the reasons he's had forth and then at page 62 the immigration judge rejects that after going into a long discussion about how It's simply based on speculation. He has no experience with his clan He doesn't speak to members of his clan or his extended family in Somalia so he just has no experience and so it's based on his own speculation of what he thinks might happen and That's just simply not enough under any courts case law to show that an individual faces a More than likely not chance of being tortured and then on top of that The government's going to acquiesce in it. So and you know, mr. Oliver cites this journalist declaration Mary Parker and you know, she goes through some of this like she calls them the lost ones and how they are Ostracized and they have trouble finding work some of them wind up in you know IDPs and internally displaced persons camps That's all awful Nobody wants to go through that but we're looking at torture here And he just hasn't presented any evidence that he's going to be at risk of something that meets the definition of torture under the regulations and I will also He claims that the board did not address the infiltration argument, you know As I said my brief the board held that he failed to show that the government would acquiesce I think that the infiltration argument is part and parcel of acquiescence But He cites also that declaration of Mary Harper to show that the government has infiltrated the government or the federal government of Somalia But if you look at that declaration Miss Parker also states that these might be government officials by day and al-shabaab By night and that seems to imply that you know, they're not acting under color of law Outwardly saying that they're al-shabaab and that's what acquiescence requires It requires a public official acting under color of law breach their legal responsibility to intervene in torture that they know about and There's just no evidence in the record that these infiltrators are doing that or torturing its citizens So mr. Pettiton, can I follow up on a question that you were talking about that? Addressing the two claims that he alleges that weren't addressed by the BIA the first one as to his torture By members of the Klan, do you believe that that one was? misconstrued or that the BIA addressed that one and I'm not sure. I understood your answer on who he would be subject to torture by So the board's decision and this is a page Four at the top of the page it Acknowledges all of the claims that he put forth before the immigration judge And it does say because he is a member of the audible Klan so Admittedly, it doesn't say that he claims he's going to be tortured by fellow members of the audible Klan but You know as an appellate body. It's looking to the arguments raised and the argument raised was that the immigration judge misconstrued the claim and The board rejected that and as I explained that the immigration judge did not misconstrued the claim And tell me again where in the IJ's opinion you believe it did not misconstrue the claim so at page 60 of the administrative record The immigration judge goes through in numbers. I'm sorry when you're when you're saying 60 I have you I have the the addendum. Is it in the addendum? Is that the opinion you're referring to the IJ's opinion? It's the immigration judge's opinion and I can pull up the page number of the judge's opinion Yeah, if you can just point me to that This is page 9 of the judge's opinion And it would be In the middle of the top of the page the paragraph that continues from the previous page it says number three that he would be tortured because he is a member of the audible Klan and So I read that one and Okay, so you're saying that there's a typo because I think that what the understanding of that is that he would be tortured simply because he's in the Klan and For being a Christian not that he would be tortured by the Klan his own clan You're reading it as a typographical error that that I one should infer that it means he would be tortured by this Klan. I would I would say that there and it will torture him Because that's the way he presented it to the judge is that these Klan members aren't gonna like him Because he's westernized and his own family treats him that way here in the United States he said And I think that his argument that is it was misunderstood and that's where I'm trying to get at what your position is regarding whether It was misunderstood. I would say that the record Shows that the immigration judge considered his argument as it was presented So what we really have here and you know, Mr. Oliver doesn't really get into the evidence But we have two competing bodies of evidence. We have the country condition evidence submitted by Mr. Jama Which shows human rights abuses and atrocities by Al-Shabaab and we have evidence submitted by the Department of Homeland Security which says that you know Mogadishu is a relatively safe place and ordinary civilians aren't targeted and that the Federal government in Mogadishu works with the UNHCR and other international agencies to bring back refugees who have sought asylum in Kenya and Yemen, so That's not the point of substantial evidence review in this court. The court's not here to re-weigh the evidence It's only looking to whether a reasonable judge Can make the decision the immigration judge made here The record supports that decision so we would ask that the petition for review be denied I would just note in passing that Mr. Jama was Removed to Somalia a little over a month ago How is that relevant? I just didn't know if the court wanted to know But he has been removed. I mean it doesn't move his Convention Against Torture claim or anything. I just as a point of information Okay, thank you, Mr. Richards, we'll hear from you in rebuttal Sure, thank you your honor just a couple points The government appears to I mean the government understands that it's not this court's job to re-weigh the evidence But that's precisely what they appear to be doing a majority of their brief Is addressing the evidence and inviting this court to ignore what the board actually decided in favor of what the government thinks the board should have decided Now just addressing the points raised First off the statement that he found Mr. Jama's testimony not compelling I don't know any other way to understand that statement other than a statement about credibility There is a statement in the record that Mr. Jama says I will not keep this a secret any longer. I can't keep it a secret Assuming that evidence is true the IJ probably would have reached different conclusion I want to move on to the board statement that we are not persuaded by this The statute gives the IJ the the ability to make fact findings. The IJ is supposed to make fact findings and frankly The the the contention that the IJ made fact findings on the claim as presented is just meritless And if you look to and I say there's some difference about page numbers I was citing two pages of the addendum But if you look to page 62 where he the IJ addresses this this this claim that this claim based on his clan I'm quoting directly from the opinion So there is no reason that this court can find that the respondent would be targeted for his membership in a clan the IJ Misunderstood the claim and made no fact findings relevant to the claim It's not the board's ability the board's not job to make those fact findings in the first instance and Certainly if it were going to make fact findings in the first instance It should explain what facts it's finding in order for this court to conduct a substantial evidence review Lastly, you know, I just want to address a brief statement made by my opposing counsel about the Mary Harper declaration about government officers by day and Al Shabaab by night That's just the the argument. There's just contrary to this court's case law Particularly in the Gonzalez payroll Ramirez payroll case this government this court addressed, you know claims related to Mexican police officers and whether and in corruption it simply cannot be and it's not the law that the claim of Acquiescence is based on official government policy. So if the government is indeed conceding that these police officers may be Al Shabaab by night, it's it's you know, which is what the evidence shows You know and that they target these individuals and point them out to Al Shabaab Then I think that's very relevant here. And there's just real no question that torture includes, you know Killings and Mr. Mr. Drama is I said in my opening is a poster child for an apostate and would certainly be targeted with that, thank you for the court's time and Thank you very much All right, thank you for your argument thank you to both counsel the case is submitted the court will file an opinion in due course